### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 3:18-cr-0022-15(VLB) |
| | : | |
| **CHAUNCEY EVANS** | : | |
| **Defendant.** | : | **November 17, 2020** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

### MEMORANDUM OF DECISION DENYING DEFENDANT CHAUNCEY EVANS MOTION FOR A REDUCTION OF SENTENCE, [Dkt. 829]

Before the Court is Defendant Chauncey Evans's motion for a reduction of his sentence to provide for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Dkt. 829]. Defendant seeks a modification of his sentence from incarceration to home confinement based on his asserted risk of severe complications should he contract COVID-19 while incarcerated at FCI Gilmer. [*Id.*]. Defendant filed supplemental authority, which the Court also considered. [Dkts. 846, 852, 931]. The Government opposes Defendant's motion [Dkts. 833 and 863]. For reasons set forth below, the Court DENIES Defendant's motion.

### Background

Mr. Evans was one of nineteen defendants arrested following an FBI investigation into a crack cocaine trafficking operation in a residential area in New Haven, Connecticut. [Dkt. 326 (Pre-Sentence Investigation Report) ¶¶ 7-

16](hereinafter PSR).[1] Mr. Evans pled guilty to one count of Conspiracy to Distribute, and to Possess with Intent to Distribute, cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). [Dkt. 274 (Order adopting Findings and Recommendations of Judge Richardson on plea)]. Mr. Evans was a street level dealer. [PSR ¶¶ 7-16]. His unlawful activities in furtherance of the conspiracy resulted in an attributed drug quantity of 73.5 grams of cocaine base, which corresponds to a guideline calculation of at least 28, but less than 112 grams of cocaine base. [PSR ¶¶ 22, 112]. Defendant's total offense level was 21. [Dkt. 394 (Sent. Hearing) at 1:03:27-1:03:32]; [PSR ¶ 31].

Because of his lengthy, serious, and unremittent criminal history, he has spent a total of 296 months (over twenty-four years) in custody for violent crimes and drug convictions. [PSR ¶¶ 35-49]. Consequently, Mr. Evans's extensive criminal history placed him in Category VI, the highest criminal history category under the U.S. Sentencing Commission's Guidelines. [PSR ¶¶ 49-52]. This resulted in an advisory guideline range of 77-96 months of incarceration. The offense carried a mandatory minimum term of five years' incarceration pursuant to 21 U.S.C. § 841(b)(1)(B).

At sentencing, the Court addressed, *inter alia*, the need to protect the public, promote respect for the law, and to deter Mr. Evans from future criminal conduct given his lengthy criminal history, as he was undeterred by having spent most of

---

[1] At sentencing, the Court confirmed that Defendant read the presentence report ("PSR"). Defendant did not have any objections to the facts as presented in the PSR and the Court adopted the PSR as its finding of fact. [Dkt. 394 (Sent. Hearing Audio) at 01:26-02:35].

his adult life in prison. [Dkt. 394 (Sent. Hearing) 47:50-55:24]. On the other hand, the Court also addressed equitable considerations arising from Mr. Evans's traumatic upbringing and the need to provide him with necessary mental health and drug treatment. [Dkt. 394 (Sent. Hearing) at 1:06:29-1:07:13].

Taking all of the 18 U.S.C. § 3553(a) sentencing factors into account, the Court sentenced Mr. Evans to the statutory minimum term of imprisonment, which was seventeen months below the recommended guideline range, to be followed by four years of supervised release. [Dkt. 394 (Sent. Hearing) at 1:08:51-1:09:25]; [Dkt. 345 (Crim. J)].

At the time of the Defendant's motion, Mr. Evans was designated to FCI Gilmer, a medium security prison in West Virginia. *See Inmate Locator Service, BOP Registration no. 25755-014*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/, (Oct. 13, 2020); *see Vera v. United States*, No. 3:11-CV-00864-VAB, 2017 WL 3081666, at *3, n. 2 (D. Conn. July 19, 2017) (taking judicial notice of the inmate locator search); see *FCI Gilmer*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/gil/, (Oct. 13, 2020). He is now designated to FCI Schuylkill, a medium security prison in Pennsylvania. *Inmate Locator Service,* (Nov. 17, 2020). His current release date is December 02, 2022. *Id.*

## Legal Standard

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations

3

omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Addressing the specific provision under which Defendant seeks relief from his sentence, the First Step Act of 2018 amended the procedural requirements for bringing a motion for resentencing to provide compassionate release. First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *2-4 (2d Cir. Sept. 25, 2020). The First Step Act amendments were intended to address past inaction by the BOP by removing the BOP as the sole arbiter of compassionate release, while still permitting the BOP to weigh-in on a defendant's request via the statute's exhaustion of administrative remedies requirement. See *id*. at 4; *see also United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338, at *3 (D. Conn. Apr.

23, 2020)(explaining the policy purpose behind the exhaustion requirement in this context).

Recently, in *Brooker*, 2020 WL 5739712, the Second Circuit held that since the BOP no longer has exclusive authority to bring a motion for compassionate release, district courts have the discretion to determine what constitutes "extraordinary and compelling" circumstances outside of the outdated U.S. Sentencing Commission policy statements when the defendant moves for compassionate release. In short, the statute only requires courts to consider "applicable" statements issued by the U.S. Sentencing Commission and the relevant policy statement, U.S.S.G. § 1B1.13, is no longer "applicable" because the policy statement refers exclusively to a motion brought by the Director of the BOP. *Id.* at 13-16. In other words, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release." *Id.* at 16. Therefore, courts may consider "…the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and not just those delineated by the U.S. Sentencing Commission's policy statement. *Id.* at 18.

Consequently, the Court may grant a Defendant's motion for compassionate release if: (1) the Defendant has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) the Court finds that, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

As to what constitutes "extraordinary and compelling" circumstances, this Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. *See, e.g. United States v. Jepsen*, 451 F. Supp. 3d 242, 245-47 (D. Conn. 2020) (granting motion for compassionate release where defendant suffers from a compromised immune system and defendant had less than eight weeks remaining on sentence); *United States v. Miller*, No. 3:15-CR-132-2 (VLB), 2020 WL 3187348, at *5 (D. Conn. June 15, 2020)(granting motion for compassionate release for severely ill defendant with less than three months remaining on sentence).

Courts considering defendants' medical vulnerability from COVID-19 ordinarily look to the CDC's guidance on at-risk health populations. *See United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539, at *4-5 (D. Conn. June 15, 2020); *see also, e.g., United States v. Adams*, No. 3:16-CR-86-VLB, 2020 WL 3026458, at *2 (D. Conn. June 4, 2020); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020). In determining whether a defendant's medical vulnerability to the virus constitutes "extraordinary and compelling" reasons for re-sentencing, courts have considered a multitude of factors in factually intensive inquiries, including: defendants' age, the severity and documented history of their health conditions, defendants' history of managing those conditions in prison, the proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served.

*United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)(citations omitted).

A motion for compassionate release is not an appropriate safety valve to ameliorate the immediate risk to inmates' health and safety posed by the pandemic. Congress empowered the BOP with the ability to expand the use of home confinement pursuant to 18 U.S.C. § 3624(c)(2).  CARES Act, Pub. L. No. 116-136 (2020). The BOP is also empowered to grant temporary furloughs. 18 U.S.C. § 3622. In contrast, if granted by the sentencing court, a motion for compassionate release results in a new judgment, with a now-reduced stated term of incarceration. *See, e.g. Jepsen,* 3:19-cr-00073-VLB-1, Dkt. 42 (amended criminal judgment following order granting unopposed motion for compassionate release).

<u>Discussion</u>

I.      <u>Exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)</u>

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a defendant must either "…fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf <u>or</u> the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."(underlining added). Here, Mr. Evans submits a copy of his inmate request for consideration for compassionate release, which is dated May 2, 2020. [Dkt. 829-1]. Warden Hudgins denied his request on May 12, 2020. [*Id.*]. Although Mr. Evans could have undertaken an administrative appeal of the warden's decision via a BP-9 form, he was not required to do so to exhaust his administrative remedies under §

7

3582(c)(1)(A), so long as he waited thirty days before unilaterally seeking judicial relief. Because thirty days have elapsed between the submission of his inmate request and the filing of his motion for resentencing on June 9, 2020, this matter is properly before the Court.

## II.    Parties' arguments

Mr. Evans originally filed a pro se motion seeking compassionate release on account of his asserted heightened risk of severe complications if he contracts COVID-19 because of pre-diabetes, high blood pressure, high cholesterol, and that he had 25% of his liver removed. [Dkt. 823 (Def. pro se mot.)]. Mr. Evans is articulate and his *pro se* motion cites other district court decisions granting compassionate release. He also cites his family circumstances, specifically, his wife's health conditions. He argues that releasing him from prison would aid other prisoners by reducing the likelihood of viral transmission. Mr. Evans's motion contains a proposed release plan, whereby he proposes to begin working in a new trade based on vocational classes and other supportive programing that he has completed in BOP custody.

Thereafter, counsel was appointed for Mr. Evans pursuant to the District's standing order and a supplemental motion for compassionate release was filed on his behalf, accompanied by medical records. [Dkt. 829]. The supplemental motion adds that Mr. Evans suffers from "hypertension, enlarged heart, difficulty breathing, liver disease and obesity and all conditions are in a state of flux." [*Id.* at 5]. Additionally, Mr. Evan's counsel argues that the BOP moved 129 prisoners to FCI Gilmer for quarantining, which resulted in five infections. [*Id.* at 5]. The

8

supplemental motion includes prison records demonstrating that Mr. Evans made a positive adjustment to the correctional setting and that he has completed numerous vocational programs. [Dkt. 829-2 (BOP Summary Reentry Plan Progress Report, 06-16-2020)]. Lastly, the supplemental motion includes a letter from Mr. Evans's wife promising to support him if he is released. [Dkt. 829-3 (B. Evans Ltr.)].

In opposition the Government argues that Mr. Evans fails to satisfy his burden of showing extraordinary and compelling circumstances because the medical evidence does not support his contention that he has any condition that the CDC recognizes as creating a heightened risk for severe complications if he contracts COVID-19. [Dkt. 833 (Gov. Mem. in Opp'n) at 12-13]. The Government argues that Mr. Evans has not shown that the BOP cannot manage his medical conditions in prison. [*Id.* at 15](citing *United States v. Gagne*, 451 F. Supp. 3d 230, 235-36 (D. Conn. 2020), *appeal withdrawn*, No. 20-1169, 2020 WL 3816311 (2d Cir. May 14, 2020)). The Government also argues that Mr. Evans is a lifelong criminal and remains a danger to the community based on his serious criminal history, which has been undeterred by prior lengthy periods of incarceration. [*Id.* at 13]. Finally, the Government argues that the weighing of the 18 U.S.C. § 3553(a) sentencing factors further militates against releasing him because it would not protect the public, deter Mr. Evans from future crimes, or promote respect for the law. [*Id.* at 15].

Mr. Evans's counsel filed a reply brief refuting the Government's contention that Mr. Evans is not medically vulnerable to severe complications from the virus. [Dkt. 835 (Def. Repl. Br.) at 1-2]. Defendant's reply brief also cites the Court's

9

decision in *United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539, at *7 (D. Conn. June 15, 2020), where the Court found recidivism less likely because the defendant's risk of infection during the pandemic required him to limit his interactions with others.

Thereafter, Mr. Evans's counsel filed two additional supplemental briefs alerting the Court to two decisions from the Eastern District of Michigan granting compassionate release motions filed by prisoners incarcerated at FCI Gilmer with Mr. Evans. [Dkt. 846](citing *United States v. Williams*, No. 15-20462, 2020 WL 4040706, at *3-4 (E.D. Mich. July 17, 2020)) and [Dkt. 852](citing *United States v. Watkins*, No. 15-20333, 2020 WL 4016097, at *2 (E.D. Mich. July 16, 2020)).

The Government responded to the supplemental authority as ordered by the Court. [Dkt. 863 (Gov. Repl. Br. to Defs. Suppl. Mems.)]. The Government argues generally that the Eastern District of Michigan cases are distinguishable because Mr. Evans's medical conditions do not render him susceptible to the virus. [*Id.* at 2]. The Government maintains that Mr. Evans remains a danger to the public and a sentence of home confinement would not comport with the statutory objectives of sentencing. [*Id.* at 2-3].

III.    <u>Whether Defendant establishes "extraordinary and compelling" reasons to modify his sentence</u>

The Court begins with the general premise that individuals held in jails and prisons are more likely than the general public to contract COVID-19. At present, the BOP reports that over 18,000 inmates have recovered from the virus and just over 3,000 remain positive nationwide. *See* Fed. Bureau of Prisons, *BOP COVID-19*

*Cases (Table)*, https://www.bop.gov/coronavirus/index.jsp, (last updated 11/17/2020). Without accounting for decreases in the BOP's population, 15% of prisoners in BOP custody have or have had COVID-19. *Id.* By comparison, the Connecticut Department of Public Health has reported approximately 95,000 COVID-19 cases, so with a population of approximately 3.565 million people, about 2.6% of the state's population is or has been infected by coronavirus. Conn. Dep't. of Pub. Health, *Coronavirus Disease 2019 (COVID-19)*, https://portal.ct.gov/coronavirus (last reviewed on 11/17/2020); Conn. Dep't. Pub. Health, *Annual Town and County Population for Connecticut-2018*, https://portal.ct.gov/DPH/Health-Information-Systems--Reporting/Population/Annual-Town-and-County-Population-for-Connecticut).[2] The Court is of the view that the increased likelihood of contracting COVID-19 in a custodial setting generally does not itself constitute "extraordinary and compelling reasons" for compassionate release. With this backdrop, the Court has closely reviewed the most recent CDC guidance identifying persons at risk of severe complications if they contract COVID-19, along with Mr. Evans's medical records, conditions at facilities where he has been incarcerated, and his personal characteristics.

For the last several months, the CDC has classified underlying health conditions that correlate to an increased risk of severe complications from

---

[2] The Court recognizes that these statistics are imperfect as reporting methodologies among different government agencies vary. They are cited for illustrative purposes.

contracting COVID-19 into two categories; conditions that are known to cause an increased risk of severe illness and those that might increase a person's risk. *People with certain medical conditions*, Ctrs. for Disease Control and Prevention, (last updated Nov. 02, 2020). The conditions listed are regularly updated as the CDC reviews new scientific research. Obesity, defined as having a BMI greater than 30 kg/m$^2$, "[h]eart conditions, such as heart failure, coronary artery disease, or cardiomyopathies," and type 2 diabetes mellitus, are among the conditions that the CDC recognizes as increasing a person's risk of severe illness from coronavirus. *Id.* By contrast, being overweight, defined as a BMI between 25 kg/m$^2$ and 30 kg/m$^2$, hypertension or high blood pressure, and liver disease are conditions that might increase risk of severe illness from coronavirus. *Id.*

Mr. Evans is 48, so his age is not a risk factor for severe illness. *Id.* The CDC reports that 8 out of 10 COVID-19 deaths have been in persons 65 years or older and less than 13% of hospitalizations were patients younger than 50 years old. *Older Adults,* Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Sept. 11, 2020).

Mr. Evans, through counsel, filed two sets of sealed medical records. The first set pre-dates his sentencing. [Dkt. 831-1 (Yale New Haven Sealed Med. R) 10/31/2014-11/28/2017]. These records verify that Mr. Evans's statement to Probation about his physical health during the pre-sentence investigation interview was accurate. [PSR ¶¶ 76-77]. The records confirm that 25% of his liver was surgically removed in 2016 because of a non-cancerous tumor [Dkt. 831-1 at 16

(Surg. Pathology Report)], but neither the treatment records nor his medical condition list reflects a diagnosis of liver disease or any complications from the surgery. His pre-sentence medical records reflect a history of obesity and hypertension. Mr. Evans is 5'10 and his weight has fluctuated. [Dkt. 831-1 (Yale New Haven Med. R., 09/21/2017) at 8](201 lbs); [PSR ¶ 76, 230 lbs.]; [Dkt. 831-2 (BOP Med. R., 02/25/2020) at 3](215 lbs.)]. Because of the chronic and variable nature of his conditions, the Court finds the medical records from his time in custody to be more indicative of his current health status and whether it correlates to an increased risk of severe complications from COVID-19.

Mr. Evans's BOP medical records show that he is not diabetic. [Dkt. 831-2 (BOP Med. R., 02/25/2020) at 3]("Prediabetes, R7303 – Resolved"). BOP records reflect that he is being treated for hypertension with several medications and he appears to maintain a normal blood pressure. [Dkt. 831-2 (BOP Med. R., 02/25/2020) at 4](med. list, blood pressure 123/76). Like the earlier records from the Yale New Haven health system, the BOP medical records do not show any on-going treatment for liver disease. Additionally, none of the medical records reflect that Mr. Evans suffers from heart disease or cardiomyopathies. Rather, a 2016 medical record references cardiomegaly, which is an enlarged heart. [Dkt. 831-1 (Yale New Haven Med. R., 10/14/2016) at 2]; Hina Amin and Waqas J. Siddiqui, *Cardiomegaly*, StatPearls, https://www.ncbi.nlm.nih.gov/books/NBK542296/ (last updated Aug. 10, 2020). The are several etiologies for the condition and there are no indications from the medical records as to what caused Mr. Evans's cardiomegaly or whether he suffers from any complications from the anatomical abnormality. *Id.*

Based on the Court's review of the medical records, it appears more likely that Mr. Evans might be at an increased risk of severe complications from COVID-19 because he is at least overweight and has hypertension. The BOP records do not clearly establish that Mr. Evans currently has a BMI greater than 30 kg/m². However, since his weight is in flux and the BOP lists obesity as a "current" health issue since February 2019 [Dkt. 831-2 (BOP Med. R., 02/25/2020) at 22], the Court will assume for purposes of his motion that Mr. Evans may be technically obese under the CDC's guidelines and therefore has a condition that places him at risk of severe illness if he contracts COVID-19. Overall, his health conditions are well controlled and any recognizable risk of severe complications if he contracts the virus is marginal.

As discussed earlier, Mr. Evans was previously designated to FCI Gilmer, which was being utilized as a quarantine site by the BOP. In *United States v. Williams*, No. 15-20462, 2020 WL 4040706, at *3-4 (E.D. Mich. July 17, 2020), the district court criticized the BOP's decision to quarantine already infected inmates at FCI Gilmer, based on a local news article that surmises that the BOP's decision resulted in five new infections at the facility. Citing Joe Smith, *Misery Mountain: Four days after out-of-state inmates were transferred to W.Va. for quarantine, the first coronavirus case was confirmed*, Times West Virginian, https://www.timeswv.com/covid-19/four-days-after-out-of-state-inmates-were-transferred-to-w-va-for-quarantine-the/article_4d6d4ff6-8cdb-11ea-b700-b34865726b5b.html (May 3, 2020)(reporting on local opposition to the BOP's quarantine plan).

14

Since Mr. Evans filed the supplemental authority, he was transferred to FCI Schuylkill. FCI Schuylkill houses over 1,000 inmates. *BOP Inmate Population Report*, Fed. Bureau of Prisons, https://www.bop.gov/about/statistics/population_statistics.jsp, (Nov. 17, 2020). The facility has been minimally impacted by the virus. At present, there are only four active coronavirus cases among the inmate population, one inmate and one staff member have recovered, and there have been no fatalities. *See BOP COVID-19 Cases (Table)*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp, (last updated 11/17/2020). That means that the total incident rate of COVID-19 at Mr. Evans's facility is .3%, well below the BOP's total incident rate and better than the State of Connecticut as a whole.

Additionally, twenty-five months remain on his 60-month sentence, i.e. 40% of Mr. Evan's mandatory-minimum sentence remains unserved. Granting compassionate release to Mr. Evans because of his marginally increased risk of severe complications when the conditions at his facility are very well controlled would amount to a windfall. *See United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020). Accordingly, the Court finds that Mr. Evans does not carry his burden of showing that "extraordinary and compelling" reasons warrant modification of his sentence.

IV.   § 3553(a) sentencing factors

Because the Court concludes that Mr. Evans did not carry his burden of establishing "extraordinary and compelling" reasons to modify his sentence, the

15

Court will only briefly discuss why the § 3553(a) sentencing factors further militate against granting Mr. Evans's motion for compassionate release. The Court's view of the § 3553(a) sentencing factors remains unchanged since sentencing. In considering Mr. Evans's history and characteristics, the Court stated that "Mr. Evans has one of the worst criminal histories I have ever seen. It began at a very young age and continued throughout his life, engaging in serious and violent criminal acts; clearly, acts that were dangerous to other people." [Dkt. 394 (Sent. Hearing Audio) at 49:30-50:00].

In discussing the need for deterrence, the Court stated that Mr. Evans is an "unremitting criminal who cannot resist committing crimes, crimes that have resulted in his spending the vast majority of his life [in custody] where he committed disciplinary infractions, some of which if they were perpetrated outside of a penal institution would constitute crimes themselves." [*Id.* at 51:18-52:05]. "Deterrence, as the Government states, here is a principle purpose of the sentence, together with the protection of the public, because of the Defendant's lifelong history of persistent, violent, and injurious criminal conduct." [*Id.* at 53:39-54:00].

As evidenced by his filings in support of the instant motion, Mr. Evans has made strides to prepare himself for reentering society. However, Mr. Evans advanced this argument at sentencing. The Court granted Mr. Evans's request for a variance and sentenced him to the mandatory minimum sentence, which was seventeen months below the bottom of the applicable guideline range. The Court is concerned that Mr. Evans would reengage in criminal activity, having served just over half of his mandatory minimum sentence.

16

This case is distinguishable from *United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539 in several important respects that further illustrate the weighing of the § 3553(a) factors in Mr. Evans's case. Unlike Mr. Evans, Mr. Rivera posed a reduced risk of recidivism because he had never been previously arrested before his federal drug conviction and has no history of violence or drug abuse. *Id.* at 2020 WL 3186539, at *1, 7. Additionally, Mr. Rivera's health conditions, including morbid obesity and diabetes, were in such a precarious state that he was designated to a federal medical center. *Id.* at 2020 WL 3186539, at *4-5. Given the conditions at Mr. Rivera's facility at the time and his overall poor health, Mr. Rivera bore a greater risk of severe complications or death should he contract the virus, either at the federal medical center or in the community. Mr. Rivera had already served 90% of his sentence. *Id.* at 2020 WL 3186539, at *4-5.

Consequently, considering the Defendant's personal characteristics under pandemic conditions, a sentence of time served would not promote respect for the law, provide just punishment for his offense or protect the public, and, critically here, would not adequately deter Mr. Evans from returning to criminal conduct.

<u>Conclusion</u>

For the above stated reasons, the Court DENIES Mr. Evans's motion for compassionate release without prejudice to renewal if the material facts in support of Mr. Evans's motion change, i.e. conditions at FCI Schuylkill deteriorate, Mr. Evans's personal health status changes, or new scientific information from authoritative sources emerges.

**IT IS SO ORDERED.**

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated this day in Hartford, Connecticut: November 17, 2020**